WILMA L. LYON, Appellant, v. BELLE BRADFIELD, Appellee.

**Real property:** CONTRACT OF SALE: PERFORMANCE: QUIETING TITLE: EVIDENCE. Defendant purchased a tract of land upon the representations of plaintiff and his agent, and under the mistaken belief, that it contained certain land with timber thereon. It was subsequently agreed in settlement of the dispute that plaintiff should convey the strip in controversy, provided defendant found a purchaser for the balance of the tract. This defendant did but plaintiff refused to perform unless a mistake in the price was rectified. Defendant then tendered the balance of the purchase price according to the contract, which was refused. *Held,* to warrant a finding that plaintiff agreed to convey the disputed tract to defendant, in consideration for the settlement and the finding of a purchaser for the remainder of the tract, and to show sufficient performance by defendant to warrant a decree quieting the title to the tract in dispute.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

SATURDAY, MARCH 14, 1914.

ACTION in equity to enforce forfeiture of contract, for the purchase of real estate. Counterclaim by defendant against plaintiff to establish and quiet her title to a part of the same lands. On trial to the court plaintiff's bill was dismissed in part and decree entered as prayed by defendant. Plaintiff appeals.—*Affirmed.*

*Read & Read,* for appellants.

*Miller & Wallingford,* for appellee.

WEAVER, J.—Plaintiff, owning a tract of land some twelve or thirteen acres in extent, sold the north five acres to the de-

fendant. Some time after said sale, the plaintiff alleges, she entered into another executory written contract with the defendant Belle Bradfield and Marion Eppard to sell to them the remainder of said tract for the sum of $1,700, payable $50 down and $25 per month thereafter until the whole principal debt with interest at 6 per cent. should be discharged. The land was described by location and its length and breadth stated in feet and fractions of a foot. The petition then avers the failure of said purchasers to pay the accruing installments of the purchase price and that due notice of forfeiture was served on the said Belle Bradfield more than thirty days before the bringing of this action. Eppard was not served and does not appear to the action. The petition further alleges that upon the making of said contract Belle Bradfield took possession of the land so sold and has continued therein. Upon these allegations it is prayed that the contract be declared forfeited and plaintiff's title quieted. The defendant denies that she was a party to said written contract, but alleges the fact to be that Eppard made the contract with plaintiff and endeavored to perform and would have performed his part thereof, but that plaintiff, though tendered payment of said installments as they fell due, refused to accept or receive the same, and, if the terms of said agreement have never been carried out, it is solely because of the refusal of the plaintiff to permit the purchaser to do so. She admits that at or about the date of said contract she took possession of the north ninety-six feet of said land and has since maintained the same, but denies that she ever took possession of the remainder of said tract or ever laid any claim thereto. She does, however, insist that the ninety-six feet of land above referred to is her own property. The nature and history of her claim is as follows: When she was negotiating for the purchase of the lot on the north end of the original tract, she examined the premises and found thereon a desirable grove of trees and proposed to buy the north five acres if it included said grove, and plaintiff's agent having charge of the transac-

tion represented to and assured her that the grove would be in fact included in such purchase, and thereupon, the land not having yet been platted or surveyed and the precise location of the line not yet being known, she entered into a written contract for the purchase of the said north five acres, which contract expressly described the land bought as "five acres with grove." On measuring it, however, it was found that, in order to include the grove in her purchase, the partition line should be carried ninety-six feet farther to the south. Thereupon, she says, a controversy arose between her and plaintiff over her claim of right to have the line moved to the south sufficiently to include the grove in her purchase, and for the purpose of adjusting or settling the same the plaintiff, after some controversy, offered and agreed that he would yield and convey said strip of land to defendant if she would find a purchaser for the remainder of the unsold tract on satisfactory terms. She further claims that she accepted the offer and did find and produce to plaintiff the said Eppard as a purchaser who was accepted, and entered into a valid contract to purchase said tract and endeavored in good faith to carry it out, being prevented only by the refusal of plaintiff to permit Eppard to do so. Having thus performed her agreement, she took possession of said ninety-six feet and has since claimed, used, and possessed it as her own. She asks therefore that her right to the ownership of this land be confirmed and her title quieted. Plaintiff denies all the affirmative matter in the answer and said counterclaim.

It will be seen that the final question of fact is: Did the plaintiff, in consideration of a settlement of defendant's claim growing out of the original purchase and of the finding of a purchaser for the remainder of the tract, agree to yield and convey to defendant the ninety-six foot strip? This inquiry being once determined, the remaining fact issues are not difficult of solution. That up to the date of the contract in suit defendant was claiming that the south line of her original purchase should be located ninety-six feet south of where the

survey placed it is hardly open to serious denial. It is shown without substantial dispute that the inclusion of the grove in her purchase was a moving consideration in her mind for buying the first lot. She so said to the agent soliciting her to buy, and he assured her that her purchase would include it. She took at least two of her friends to view it, and in their presence discussed the matter with plaintiff's agent and talked about getting the grove. When the written memorandum of sale was signed by the agent, she insisted that specific mention be made of the grove, and this was done, describing the land as the "north five acres with grove." Immediately thereafter she secured the consent of the tenant in possession to yield it to her. Later, after the contract was made and part of the purchase price paid, a survey resulted in placing a large part of the grove south of her line. It would be hardly possible for a man, and quite impossible for a woman, to submit to such disappointment with equanimity, and we can readily believe that defendant protested to plaintiff or to her husband, who had immediate charge of the business and insisted that the ninety-six feet of land necessary to give her the grove rightfully belonged to her. Nor is her story unreasonable that plaintiff's representative—her husband—recognizing some merits in defendant's claim and to have done with her complaints, finally consented to yield to her the additional strip of land in settlement of the dispute if as further consideration she would find a purchaser for the rest of the land. While plaintiff's husband denies this, we think the preponderance of probabilities is with the defendant, and that her theory of the transaction finds material corroboration in the fact that the very writing sued upon contains the stipulation that when the terms of the contract should be performed plaintiff would deed this ninety-six feet to Belle Bradfield and the remainder of the tract to Eppard, the purchaser whom she claims to have produced.

If then the failure to carry out the contract for the sale of the remainder of the land is chargeable to the plaintiff, the

court below made no mistake in sustaining defendant's counterclaim. Indeed, if the alleged agreement of settlement in which she was to find a purchaser for the remainder of the tract had never been made, and defendant had rested her claim solely upon her original purchase and the facts as hereinbefore recited respecting the same, the court might well have held her entitled to the same relief. But turning to the facts as to the performance or failure to perform the contract in suit, it is shown without substantial controversy that, soon after the writing had been executed, plaintiff's husband demanded that a change be made therein because of an alleged mistake in computation of the purchase price, and that it should be corrected by increasing such price beyond the sum stated in the writing. This demand being denied, he adopted the plan of refusing to receive payment of the installments as they fell due from month to month. Eppard being in the employ of the defendant, she, at his request, continued to tender payment of the accruing installments as they fell due, and both plaintiff and her husband as persistently refused to accept them, unless the alleged mistake was rectified. At the end of some seven or eight months, Eppard, having become discouraged or disgusted over the matter, abandoned further effort. At one place in his testimony Mr. Lyons says the payments were refused because they were tendered to be applied on the purchase of the ninety-six foot strip and not on the contract generally. In this, however, he is clearly mistaken, as most of the tenders were made in writing and clearly specify that the payments were offered upon the contract as written. Indeed, Lyons himself testifies that he informed defendant he "was not disposed to carry out the contract unless the mistake was rectified." There is no evidence tending in any manner to show that the purchase of the larger tract was not made in good faith or would not have been carried to completion according to its terms except for plaintiff's repeated and positive refusal to proceed with it. Such being the case, it follows that defendant must be held to have duly performed

her part of the agreement, and that she was entitled to have her right in the land claimed by her established by the court as is done in the decree.

We have given no special consideration to the question whether defendant did or did not sign the writing. We think it not a matter of controlling importance. It is perfectly clear —indeed, the contract itself tends to sustain that conclusion— that the only interest of the defendant in the transaction was to secure to herself the ninety-six foot strip of land; the remainder to be conveyed to Eppard. If we were to find that she did sign the paper, it would have to be held that her relation to Eppard and his purchase of the larger tract of land was that of surety only, and her signature, if proved or admitted, would not affect the merit of her claim against the plaintiff.

The case has some peculiar features, and they are not all on one side of the controversy; but we believe the decree below works substantial equity between the parties and, it is therefore—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concurring.